No. 46,172

BLUE STAR SUPPER CLUB, INC., *Appellant,* v. CITY OF WICHITA, KANSAS, *A Municipal Corporation, Appellee.*

(495 P. 2d 524)

Opinion filed February 10, 1972.

*Jacob S. Graybill,* of Wichita, argued the cause, and *Robert R. Arnold,* also of Wichita, was with him on the brief for the appellant.

*Arthur G. Johnson,* of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The plaintiff, Blue Star Supper Club, Inc., is a non-profit Kansas corporation with its place of business at 4545 South Hydraulic in Wichita. The club holds a class A private club license issued under the provisions of K. S. A. 1971 Supp. 41-2601, *et seq.,* commonly known as the Private Club Act (sometimes referred to herein as the act).

On August 19, 1969, the city of Wichita adopted Ordinance No. 30-747 requiring that the premises of any club licensed under the act be closed to members and to the public between the hours of 3 a. m. and 9 a. m. on any day other than Sunday and from 3 a. m. to 12 noon on Sundays. The present action is brought by the club for a declaratory judgment declaring the ordinance void and for an injunction precluding the city from enforcing the ordinance. Judgment was entered in the city's favor and the Blue Star Supper Club has appealed.

The club presents three points: (1) The ordinance conflicts with K. S. A. 1971 Supp. 41-2614 and hence is void under K. S. A. 41-208

and K. S. A. 1971 Supp. 41-2631. (2) The ordinance is unreasonable, arbitrary and capricious and therefore void. (3) The ordinance is not a valid exercise of the city's police power. The latter two points present basically the same issue and will be considered together.

Point number one is two pronged. First, is the ordinance void as being in conflict with 41-2614? This statute provides that no licensed club shall allow the serving, mixing or consumption of alcoholic liquor on its premises between 3 a. m. to 9 a. m. on weekdays and from 3 a. m. to noon on Sundays. K. S. A. 1971 Supp. 41-2631 provides no city shall enact an ordinance in conflict with the provisions of the Private Club Act and any ordinance conflicting with that act shall be void.

A similar situation was disclosed in *Leavenworth Club Owners Assn. v. Atchison,* 208 Kan. 318, 492 P. 2d 183. In that case the city of Leavenworth adopted an ordinance prohibiting licensed clubs from allowing the serving, mixing or consumption of alcoholic liquor between 1:30 a. m. and 9 a. m. on weekdays and from 1:30 a. m. to 12 noon on Sundays. The plaintiffs contended in that case that the Leavenworth ordinance conflicted with K. S. A. 1971 Supp. 41-2614. We rejected that contention and held that 41-2614 gave the plaintiffs in that case no vested right to serve or permit the mixing or consumption of alcoholic drinks until the hour of 3 a. m.; that the limitation contained in the ordinance merely added to or enlarged the limitation imposed by the statute and hence was not contradictory or conflicting in a legal sense. In this connection see, also, *Clemons v. Wilson,* 151 Kan. 250, 98 P. 2d 423.

We believe the rationale underlying the decisions in *Clemons* and *Leavenworth* is clearly applicable here. The Wichita ordinance does not conflict with K. S. A. 1971 Supp. 41-2614. While the statute relates to the hours during which alcoholic liquor may be served, mixed or consumed on licensed club premises, the ordinance simply imposes closing hours. Those hours do not interfere with the time limitations of the statute. Although the hours set by ordinance for closing coincide with the hours during which the serving, mixing or consumption of alcoholic liquor is prohibited by statute, this coincidence does not imply that the statute and ordinance are at cross purposes, or that the ordinance contravenes the provisions of the statute. There is no disharmony between the two enactments; they may coexist with amity.

But the plaintiff contends that the ordinance is void as contravening the pre-emptive provisions of K. S. A. 41-208. This statute was enacted in 1949 as part of the Kansas Liquor Control Act and reads as follows:

"The power to regulate all phases of the control of the manufacture, distribution, sale, possession, transportation and traffic in alcoholic liquor and the manufacture of beer regardless of its alcoholic content, except as specifically delegated in this act, is hereby vested exclusively in the state and shall be exercised as provided in this act. No city shall enact any ordinance in conflict with or contrary to the provisions of this act and any ordinance of any city in effect at the time this act takes effect or thereafter enacted which is in conflict with or contrary to the provisions of this act shall be null and void. Nothing contained in this section shall be construed as preventing any city from enacting ordinances declaring acts prohibited or made unlawful by this act as unlawful or prohibited in such city and prescribing penalties for violation thereof, but the minimum penalty in any such ordinance shall not exceed the minimum penalty prescribed by this act for the same violation, nor shall the maximum penalty in any such ordinance exceed the maximum penalty prescribed by this act for the same violation."

In our opinion the pre-emptive provisions of the foregoing statute are not as broad or as inconclusive as the plaintiff suggests. By its own terms, the statute applies only to the act of which it is a part— the Liquor Control Act of 1949 (L. 1949, ch. 242). The passage of the Liquor Control Act closely followed approval by Kansas voters of a proposal to amend Article 15, Section 10, of the Kansas Constitution which at that time prohibited the manufacture and sale of intoxicating liquors. As amended, Article 15, section 10, now empowers the legislature to prohibit intoxicating liquors in certain areas, to regulate, license and tax the manufacture and sale of intoxicating liquors and to regulate the possession and transportation of the same.

It occurs to us that what the legislature intended by including the pre-emptive provisions of 41-208 as part of the Liquor Control Act was to give the state exclusive power to control and regulate the traffic in alcoholic liquor and the manufacture of beer. To such end it was provided that the power to regulate and control the "manufacture, distribution, sale, possession, transportation and traffic in alcoholic liquor and the manufacture of beer regardless of its alcoholic content" should be vested exclusively in the state. This pre-emptive clause contains no reference whatever to the consumption of alcoholic liquor, nor were any restrictions placed upon consumption in the entire Liquor Control Act, with one exception. That exception

is found in section 82 of that act, K. S. A. 41-719, where it was made unlawful for any person to drink or consume alcoholic liquor upon the public streets, alleys, roads or highways, or in beer parlors, taverns, pool halls or places to which the general public had access. (Subsequent amendments make it possible for certain public property, in limited cases, to be exempted from the restrictions of this statute. See K. S. A. 1971 Supp. 41-719.)

It was not until the year 1965, some sixteen years after the Liquor Control Act was adopted, that the legislature again turned its attention to the consumption of alcoholic beverages and enacted the Private Club Act (L. 1965, ch. 316). This act deals with places where alcoholic liquor may be served and consumed. In section 1 of the act (now K. S. A. 1971 Supp. 41-2601 [b] [1]) a club is defined as "an organization licensed hereunder to which the club members shall be permitted to resort for the purpose of consuming alcoholic liquor." Section 2 of the act, now K. S. A. 1971 Supp. 41-2602, specifically relates to consumption. This statute reads:

"The consumption of alcoholic liquor by any person shall be authorized in this state:

" (a) Upon private property by those occupying such private property as an owner or as the lessee of an owner and by the guests of said owner or lessee provided that no charge is made by the owner or lessee for the serving or mixing of any drink or drinks of alcoholic liquor or for any substance comixed with any alcoholic liquor; and if no sale of alcoholic liquor in violation of K. S. A. 41-803 takes place on said private property;

"(b) at a club licensed by the director under the provisions of this act;

"(c) in a lodging room of any hotel, motel or boarding house by the occupant of said lodging room or his guests provided the occupant is not engaged in a sale of liquor in violation of K. S. A. 41-803; and if the occupant makes no charge for (1) serving or mixing any drink or drinks of alcoholic liquor, or (2) for any substance comixed with any alcoholic liquor;

"(d) in a private dining room of a hotel, motel or restaurant when said dining room is rented or made available on a special occasion to an individual or organization for a private party and if no sale of alcoholic liquor in violation of K. S. A. 41-803 takes place at said private party."

A third section of the Private Club Act, now appearing as K. S. A. 1971 Supp. 41-2603, declares that consumption of alcoholic liquor at any place other than those provided in the act shall be deemed to be consumption in a place to which the general public has access.

The foregoing provisions of the Private Club Act clearly indicate to us that its purpose is to regulate and control the consumption of alcoholic liquor, not the liquor traffic. In our opinion the act does

not encroach upon those areas which the legislature intended to pre-empt for exclusive state action.

In concluding that the regulation and control of the consumption of alcoholic liquor is not an area exclusively reserved by the state we believe it is significant that when the legislature adopted K. S. A. 1971 Supp. 41-2631 as a component part of the Private Club Act, and forbade therein the enactment of any ordinance conflicting with the act, it did not include a pre-emptive provision. We cannot view the omission as unintentional. The legislature was perfectly aware of the method by which it could have vested exclusive control and regulation of liquor consumption in the state had it so intended, as is evidenced by its inclusion of the pre-emptive provision contained in K. S. A. 41-208.

We turn to the other issue. Is the Wichita ordinance void as being an unreasonable, arbitrary and capricious exercise of the police power?

The regulation of an occupation, trade or business is widely held to be a legitimate exercise of the police power, where the unrestricted pursuit of the same might adversely affect the public health, safety, morals or general welfare. This principle presupposes that the regulation is reasonable, is not arbitrary, and that it bears a logical connection with the objectives to be accomplished. (56 Am. Jur. 2d, Municipal Corporations, §§ 471, 472, pp. 520-523.) The general subject was explored by this court in *Grigsby v. Mitchum*, 191 Kan. 293, 380 P. 2d 363, where a challenge was directed to an ordinance enacted by the governing body of Kansas City, Kansas requiring a license for the operation of pinball machines in that city. In the course of its opinion the court said:

"Almost every exercise of the police power will necessarily either interfere with the enjoyment of liberty or the acquisition, possession and production of property, or involve an injury to a person, or deprive a person of property within the meaning of the Fourteenth Amendment to the Constitution of the United States. Nevertheless, it is well settled that an exercise of the police power having such an effect will be valid if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public, and if it is not unreasonable or arbitrary.

"Whether an exercise of the police power does bear a real and substantial relation to the public health, safety, morals or general welfare of the public, and whether it is unreasonable or arbitrary are questions which are committed in the first instance to the judgment and discretion of the legislative body, and, unless the decisions of such legislative body on those questions appear to be clearly erroneous, the courts will not invalidate them.

"In determining whether an ordinance which has the effect of prohibiting pinball machines by conditions imposed upon the issuance of a license is reasonable, and whether it has a substantial relationship to the health, morals, safety or general welfare of the people of a municipality, the court may weigh the benefit to those people affected by the elimination of such devices against the benefits in having such devices available for use by those people, and the interests of the appellees as the owners of those devices." (p. 302.)

In the *Grigsby* case the court reached the conclusion that the ordinance was valid and that its enactment was within the legislative power of the city.

Rules relating to the regulation of hours of business are found stated in 56 Am. Jur. 2d, Municipal Corporations, Etc., § 474, p. 526:

"No generalization can safely be stated as to the validity and reasonableness of municipal regulations of the time during which businesses may be conducted. The result depends largely on the nature of the business sought to be regulated.

"Regulations by municipalities of the hours during which specified businesses may be conducted have been declared reasonable and constitutional where there is a patent relationship between the regulations and the protection of the public health, safety, morals, or general welfare, such as where the business is of such a character that the public health or morals are likely to be endangered if it is carried on during the late hours of the night. . . ."

It may be argued that the Blue Star Supper Club is not a business within the usually accepted meaning of that term, and it must be conceded there are points of difference. We believe, however, there is sufficient analogy between the two for purposes of comparison. Especially would there seem to be points of similarity between a licensed private club and an ordinary restaurant where the former dispenses both food and drink, as is true in the case before us.

The plaintiff complains that the city ordinance is unreasonable, arbitrary and capricious, in that it does not apply to commercial twenty-four hour restaurants or truck stops. We do not view the classification made by the ordinance as being unreasonably discriminatory. Premises on which alcoholic liquor is available for consumption as late as 3 a. m. can well be said, in our estimation, to occupy a different status than do those where more innocuous beverages alone are available for those who thirst. The ordinary commercial twenty-four hour dining stop does not provide its patrons with facilities for having a snifter with their late meals. Although the record before us reveals no infractions of K. S. A. 1971 Supp. 41-2614, so far as after-hours consumption of liquor is

concerned, the potential for violation appears obvious. At the very least we feel safe in saying there is greater opportunity for one, so inclined, to slake his post 3 a. m. thirst at a private club than at a common commercial all-night eatery.

The question of reasonable classification came before this court in *Tuloss v. City of Sedan,* 31 Kan. 165, 1 Pac. 285, and we believe it was properly answered in that case. The city had adopted an ordinance providing for the levy and collection of a license tax on merchants. Under the ordinance an annual license fee of eighty dollars, payable quarterly, was levied on druggists having a permit from the probate judge for the sale of intoxicating liquors, and a fee of only five dollars on druggists who did not have such a permit.

The plaintiff paid into the city treasury the sum of twenty dollars (a quarterly payment) and obtained a license as a druggist having a permit to sell intoxicating liquors. He then commenced an action to recover fifteen dollars of that amount as being an illegal exaction. The question presented was whether the ordinance was valid, and this court provided an affirmative answer. The court's discussion on the point is found on page 168:

"Now we think there is a material difference between the two classes of druggists above mentioned. We must suppose that druggists who have permits to sell intoxicating liquors will sell the same for all lawful purposes, while the druggists who do not have any such permits will not sell intoxicating liquors for any purpose. We suppose that the one class will sell intoxicating liquors, because they have obtained permits therefor, while the other class will not sell intoxicating liquors at all, because it would be a violation of law for them to do so; and the druggist who sells intoxicating liquors may do a business vastly greater than the druggist who does not sell any such liquors. Hence there is a substantial difference between the two classes, and some reason for taxing the former at a greater rate than the latter. . . ." (p. 168.)

In the light of what has been said we conclude that Wichita Ordinance No. 30-747 is valid and we therefore affirm the judgment of the court below.