No. 46,697

JOHN M. CLAFLIN, STANLEY R. FORD, and JAMES M. SAMBOL, The Board of Trustees of the Soldiers' and Sailors' Memorial Building of Kansas City, Kansas, *Appellees*, v. RICHARD F. WALSH, PAT HANLON, and HUGH P. DOHERTY, The Board of Commissioners of the City of Kansas City, Kansas, *Appellants*.

(509 P. 2d 1130)

Opinion filed May 12, 1973.

*Matthew G. Podrebarac,* of Kansas City, argued the cause, and was on the brief for the appellants.

*Robert E. Jenkins,* of Kansas City, argued the cause, and *Philip C. Lorton,* of Kansas City, was with him on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action challenging the validity of a charter ordinance passed by the Board of Commissioners of the City of Kansas City, Kansas, under the authority of the home rule amendment, Article 12, Section 5, of the Kansas Constitution. The plaintiffs-appellees are the Board of Trustees of the Soldiers' and Sailors' Memorial Building in Kansas City. The defendants-appellants are the City Commissioners of Kansas City. In this opinion we will refer to the plaintiffs as the trustees and to the defendants as the city commissioners.

Charter Ordinance No. 48, which became effective September 14, 1971, exempted the city of Kansas City, Kansas, from portions of K. S. A. 1970 Supp. 73-407. In effect, Charter Ordinance No. 48 substitutes the board of commissioners of the city of Kansas City as manager and controller of the Soldiers' and Sailors' Memorial

Building in place of the board of trustees who had been appointed by the mayor pursuant to 73-407. The trustees, obviously disturbed by the challenge to their authority, filed an action for injunctive relief challenging the validity of the charter ordinance and asking the court to declare it illegal and unconstitutional. The matter was set promptly for trial. The parties stipulated that procedurally the charter ordinance had met all the constitutional requirments, that the only questions before the court were pure questions of law and that the legality and constitutionality of Charter Ordinance No. 48 was the only issue to be determined by the court. The district court ruled that the ordinance was in violation of the Kansas Constitution for the reason that 73-407 was uniformly applicable to all cities in the state of Kansas and was not subject to charter ordinance under the home rule provision, Article 12, Section 5, of the Constitution of Kansas. From this adverse ruling the city commissioners have brought a timely appeal to this court.

The home rule amendment was adopted by the people in the general election of 1960, becoming effective July 1, 1961. In order to determine the issues of law presented on this appeal this court must, of necessity, construe certain provisions of the home rule amendment and apply that amendment to the peculiar facts of this case to determine the validity of the charter ordinance adopted by the city of Kansas City.

Article 12, Section 5, of the Kansas Constitution often referred to as the home rule provision provides in pertinent part as follows:

"§ 5. Cities' powers of home rule. (a) The legislature shall provide by general law, applicable to all cities, for the incorporation of cities and the methods by which city boundaries may be altered, cities may be merged or consolidated and cities may be dissolved: *Provided,* That existing laws on such subjects not applicable to all cities on the effective date of this amendment shall remain in effect until superseded by general law and such existing laws shall not be subject to charter ordinance.

"(b) Cities are hereby empowered to determine their local affairs and government including the levying of taxes, excises, fees, charges and other exactions except when and as the levying of any tax, excise, fee, charge or other exaction is limited or prohibited by enactment of the legislature applicable uniformly to all cities of the same class: *Provided,* That the legislature may establish not to exceed four classes of cities for the purpose of imposing all such limitations or prohibitions. Cities shall exercise such determination by ordinance passed by the governing body with referendums only in such cases as prescribed by the legislature, subject only to enactments of the legislature of statewide concern applicable uniformly to all cities, to other enactments of the legislature applicable uniformly to all cities, to enactments of the legislature applicable uniformly to all cities of the same class limiting or prohibiting the

levying of any tax, excise, fee, charge or other exaction and to enactments of the legislature prescribing limits of indebtedness. All enactments relating to cities now in effect or hereafter enacted and as later amended and until repealed shall govern cities except as cities shall exempt themselves by charter ordinances as herein provided for in subsection (*c*).

"(*c*) (1) Any city may by charter ordinance elect in the manner prescribed in this section that the whole or any part of any enactment of the legislature applying to such city, other than enactments of statewide concern applicable uniformly to all cities, other enactments applicable uniformly to all cities, and enactments prescribing limits of indebtedness, shall not apply to such city.

"(2) A charter ordinance is an ordinance which exempts a city from the whole or any part of any enactment of the legislature as referred to in this section and which may provide substitute and additional provisions on the same subject. Such charter ordinance shall be so titled, shall designate specifically the enactment of the legislature or part thereof made inapplicable to such city by the adoption of such ordinance and contain the substitute and additional provisions, if any, and shall require a two-thirds vote of the members-elect of the governing body of such city.

. . . . . . . . . . . .

"(*d*) Powers and authority granted cities pursuant to this section shall be liberally construed for the purpose of giving to cities the largest measure of self-government.

"(*e*) This amendment shall be effective on and after July 1, 1961."

Under the authority of the home rule provision the city commissioners enacted Charter Ordinance No. 48. It provided in part as follows:

### "CHARTER ORDINANCE No. 48

"CHARTER ORDINANCE exempting the City of Kansas City, Kansas, from certain provisions of K. S. A. 1970 Supp. 73-407, relating to the Soldiers and Sailors Memorial Building, and providing substitute and additional provisions on the same subject.

"BE IT ORDAINED BY THE GOVERNING BODY OF THE CITY OF KANSAS CITY, KANSAS:

"Section 1. The City of Kansas City, Kansas, by the power invested in it by Article 12, Section 5, of the Constitution of the State of Kansas, hereby elects and exempts itself from and makes inapplicable to it, the provisions of K. S. A. 1970 Supp. 73-407, relating to the Soldiers and Sailors Memorial Building, and to provide substitute and additional provisions as hereinafter provided.

"Section 2. That the management and control of the Soldiers and Sailors Memorial Building shall be vested in a board of city commissioners. The expense of maintenance of said memorial shall be paid out of the general government fund of the city, for which the city is authorized to make a levy upon all taxable tangible property in the city: Provided, That the board of city commissioners shall have full authority to lease all or any part of said building for hire to any person or persons desiring to lease the same for a term not to exceed one (1) year at a time and fix the rate and terms upon which the charge shall be made and collected therefor: Provided further, That the board

of city commissioners shall have full authority to lease any suitable portion or portions of said building to any concessionaire desiring to lease the same, for a term of not to exceed ten (10) years, and to fix the rate and terms upon which the charge shall be made and collected therefor."

The trustees attack the validity of Charter Ordinance No. 48 on the theory that K. S. A. 1970 Supp. 73-407 providing for a board of trustees is uniformly applicable to all cities in the state and therefore the city commissioners acted beyond their authority in exempting the city of Kansas City from its provisions. 73-407 is concerned with the management and control of memorial buildings and provides as follows:

"73-407. Memorial by counties and cities; trustees; fund; taxation; lease. That the management and control thereof, if a county building, shall be vested in a board of three (3) trustees to be appointed by the county commissioners, and if a city building, shall be appointed by the mayor of said city. Such trustees shall be residents of the county or city wherein the building is located: *Provided, however,* That at least two of said trustees shall have seen service in the army, navy or marine corps of the United States in time of war. One (1) trustee shall be appointed for one (1) year, one (1) trustee for two (2) years and one (1) trustee for three (3) years, and thereafter each trustee shall be appointed for three (3) years. Said trustee shall serve without compensation and shall make annual reports and recommendations to the proper county and the city officials.

"The expense of maintenance of said memorial shall be paid out of the general fund of the county or city, or in case the same shall not be sufficient, shall be paid out of a special fund which shall be created, for which the counties or cities are authorized to make a levy upon all taxable tangible property in the county or city in an amount not exceeding the limitation prescribed by K. S. A. 79-1947, 79-1948, 79-1949, 79-1950, 79-1951, 79-1952 and 79-1953; and in counties having a population of more than seventeen thousand (17,000) and less than twenty-two thousand (22,000), which contain a first-class city, said tax levy shall be in addition to all other levies authorized or limited by law and shall not be subject to nor within any aggregate levy prescribed by article 19 of chapter 79 of the Kansas Statutes Annotated, and any acts amendatory thereof: *Provided,* That the board of trustees shall have full authority to lease all or any part of said building for hire to any person or persons desiring to lease the same for a term not to exceed one (1) year at a time and fix the rate and terms upon which the charge shall be made and collected therefor: *Provided further,* That the board of trustees of any such memorial in any city of the second class located in a county with a population of not less than twelve thousand (12,000) and not more than fifteen thousand (15,000) and having an assessed tangible valuation of not less than thirty-two million dollars ($32,000,000) and not more than thirty-five million dollars ($35,000,000) is hereby authorized to lease all or any part of said memorial to the Kansas national guard for a term of not to exceed ten (10) years and to fix the rate and terms upon which the charge shall be made and collected therefor: *Provided further,* That the board of trustees of any such memorial in

any city having a commission form of government, and a population of more than one hundred fifty thousand (150,000), shall have full authority to lease any suitable portion or portions of said building to any concessionaire desiring to lease the same, for a term of not to exceed ten (10) years, and to fix the rate and terms upon which the charge shall be made and collected therefor."

The city commissioners raise three points of error on this appeal. They are as follows:

(1) The court erred in its finding that the city of Kansas City was without authority or jurisdiction to pass Charter Ordinance No. 48.

(2) The court erred in its finding that K. S. A. 1970 Supp. 73-407 was a statute uniformly applicable to all cities and counties in the state of Kansas and therefore, not subject to such charter ordinance.

(3) The court erred in not correctly applying the constitutional provision under Article 12, Section 5 (d) of the constitution, wherein liberal construction is to be given the powers and authority granted cities for the purpose of giving them the largest measure of self-government.

When these points are considered together it is clear that the thrust of the appellants' argument can be stated in a single fundamental issue to be determined: Is 73-407 "applicable uniformly to all cities" within the meaning of Article 12, Section 5 (c) (1) so as to preclude the city commissioners of Kansas City from transferring the management of the memorial building from the trustees to the city commissioners?

This is the first occasion we have had to construe these provisions of Article 12, Section 5 (c) and to determine the meaning of the phrase "applicable uniformly to all cities" as contained in that section.

Prior to the home rule amendment Kansas cities were seriously limited in their power to solve local problems by local legislation. Cities existed by and through statutes and had only such powers as were expressly conferred by statute without resort to implication. (*Coronado Development Co. v. City of McPherson*, 189 Kan. 174, 368 P. 2d 51.) This concept was substantially changed by the home rule amendment effective July 1, 1961. The home rule power of cities is stated in Article 12, Section 5 (b) as follows:

"Cities are hereby empowered to determine their local affairs and government. . . ."

No longer are cities dependent upon the state legislature for their authority to determine their local affairs and government. Since home rule, cities have power granted directly from the people through the constitution without statutory authorization. (*Capitol*

*Cable, Inc. v. City of Topeka,* 209 Kan. 152, 161, 495 P. 2d 885; *Hampton v. City of Wichita,* 192 Kan. 534, 389 P. 2d 757.)

The home rule power of cities is not absolute. It is subject to the power of the legislature to act in certain areas—exclusively in some, optionally in others. These limitations on city power are expressly set forth in the home rule amendment. Section 5 (*a*) of the constitutional provision cited in full above vests absolute and exclusive power in the legislature in regard to the procedure for incorporating cities, the methods of altering boundaries, the methods by which cities may be merged or consolidated, and the methods by which cities may be dissolved. Statutory enactments in these areas are not subject to the exercise of home rule power by charter ordinance.

The optional powers of the legislature are set forth in Section 5 (*b*) as limitations or exceptions to the exercise of home rule power by cities. The home rule power is subject to optional control by legislative action in four specific areas:

(1) Enactments of statewide concern which are applicable uniformly to all cities.
(2) Other enactments of the legislature applicable uniformly to all cities.
(3) Enactments applicable uniformly to all cities of the same class limiting or prohibiting the levying of any tax, excise, fee, charge or other exaction.
(4) Enactments of the legislature prescribing limits of indebtedness.

Section 5 (*d*) of Article 12 requires a liberal construction of the powers and authority granted cities for the purpose of giving to cities the largest measure of self-government. This provision simply means that the home rule power of cities is favored and should be upheld unless there is a sound reason to deny it. Where the legislature has acted in some area a city's power to act in the same area should be upheld unless the legislature has clearly preempted the field so as to preclude city action. Unless there is actual conflict between a municipal ordinance and a statute, the city ordinance should be permitted to stand. (*Leavenworth Club Owners Assn. v. Atchison,* 208 Kan. 318, 492 P. 2d 183.)

In view of the liberal construction provision of Section 5 (*d*), in determining whether a legislative enactment is applicable uniformly to all cities such a legislative intent should be clearly evident before the courts should deny a city the right to exercise home rule power in that area. Even before the passage of the home rule amendment we held that legislative intent to reserve exclusive jurisdiction to the state to regulate must be manifested clearly by statute before it can be held that the state has withdrawn from the cities power to

regulate in the premises. (*City of Beloit v. Lamborn*, 182 Kan. 288, 321 P. 2d 177.)

In some cases the legislative intention has been made clear and unequivocal. By specific language the legislative intent is shown to be that the statute is to be applied uniformly to all cities. Such a statute was involved in *Ash v. Gibson*, 146 Kan. 756, 74 P. 2d 136, which concerned the application of the uniform act regulating traffic on highways. There it was pointed out that in K. S. A. 8-507 the legislature stated clearly that the provisions of that act should be applicable and uniform throughout the state and in all political subdivisions and municipalities therein. In K. S. A. 41-208, a part of the Kansas Liquor Control Act, the legislature stated clearly that no city shall enact any ordinance in conflict with or contrary to the provisions of the act. An interpretation of that statute was before the court in *Blue Star Supper Club, Inc. v. City of Wichita*, 208 Kan. 731, 495 P. 2d 524.

The difficulty is that in many statutes the legislative intention to have uniformity throughout the state is not expressly stated. In that situation courts are required to glean legislative intent by applying established rules of statutory construction. In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act but are required to consider and construe together all parts thereof *in pari materia*. When the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law. (*Gnadt v. Durr*, 208 Kan. 783, 494 P. 2d 1219.) In addition, to be *in pari materia* statutes need not have been enacted at the same time. Statutes relating to the same subject, although enacted at different times, are *in pari materia* and should be construed together. (*Flowers, Administratrix v. Marshall, Administrator*, 208 Kan. 900, 494 P. 2d 1184.)

These rules of construction require us to consider all statutes relating to the same subject together in determining legislative intent. We should follow these rules in determining whether the legislature intended to have a statute applied "uniformly to all cities."

With these principles in mind we now turn to the specific issue to be determined here. Is K. S. A. 1970 Supp. 73-407 applicable uniformly to all cities within the meaning of Article 12, Section 5

(*c*) (1) so as to preclude the city commissioners of Kansas City from transferring the management of the memorial building from the trustees to the city commissioners?

K. S. A. 1970 Supp. 73-407 is contained in Article 4 of Chapter 73 which is concerned with the general subject of memorials, monuments and grave markers. In Article 4 we find a hodgepodge of statutes pertaining to memorials, monuments and grave markers with many exceptions pertaining to cities of various classes and counties of various sizes. For instance 73-422 deals only with Sedgwick county; 73-423 specifically deals only with the city of Winfield; 73-433 deals specially with the issuance of bonds by cities of the first class having a population of over 100,000; 73-444 permits only first-class cities to issue additional bonds to finance the repair and improvement of memorial buildings.

K. S. A. 1970 Supp. 73-407 permits three exceptions in its application to various cities. The first exception allows a variation in the levying of taxes to raise funds for maintenance of memorials in counties which contain a first-class city and have a population of more than 17,000 and less than 22,000. The second proviso permits a memorial building to be leased for a term of not to exceed ten years to the Kansas national guard in all cities of the second class located in a county with a population of not less than 12,000 and not more than 15,000 and having an assessed tangible valuation of not less than $32,000,000 and not more than $35,000,000. The third proviso is applicable only to cities having a population of more than 150,000 having a commission form of government and grants authority to the board of trustees to lease any portion of the memorial building to a concessionaire for a term not to exceed ten years. In view of these exceptions in 73-407 it is difficult to find a clear legislative intent that it be applicable uniformly to all cities.

It is also important to note that under the provisions of K. S. A. 73-427a pertaining to county memorials and monuments after the erection of a memorial on a city street or park in a county seat, the *governing body* of that city shall have charge and care of such memorial. There is nothing in that statute which requires a board of trustees to manage and control the operation of the memorial. In order for a statute to be applicable uniformly to *all* cities there must be no exceptions. K. S. A. 73-427 clearly makes it possible for the governing body of a county seat city to have charge and care of a memorial. In view of this statute it cannot be said that the legislature intended that portion of K. S. A. 1970 Supp. 73-407 which

provides for a board of trustees should be applicable uniformly to all cities within the state.

In view of the various statutory provisions discussed above we have no hesitancy in holding that the district court was in error in holding that the board of city commissioners of Kansas City, Kansas, was without authority or jurisdiction to pass Charter Ordinance No. 48.

The judgment of the trial court is reversed and the case is remanded and the trial court is instructed to enter judgment in favor of the appellants.