No. 62,450

LESLIE W. BLEVINS, SR., *Appellant,* v. NANCY HIEBERT, WARREN RHODES, and DAVID HOPPER, individually and in their capacity as the BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY, KANSAS; and DENNIS CONSTANCE, MICHAEL RUNDLE, MICHAEL AMYX, SANDY PRAEGER, and ROBERT SCHUMM, individually and collectively as members of the CITY OF LAWRENCE BOARD OF CITY COMMISSIONERS, *Appellees.*

(795 P.2d 325)

Opinion filed July 13, 1990.

*Donald G. Strole,* of Lawrence, argued the cause and was on the briefs for appellant.

*John W. Lungstrum,* of Stevens, Brand, Lungstrum, Golden & Winter, of Lawrence, *Mary F. Carson,* of Gilmore & Bell, of Overland Park, and *Barkley Clark,* of Shook, Hardy & Bacon, of Kansas City, Missouri, argued the cause, and *Scott J. Bloch,* of Stevens, Brand, Lungstrum, Golden & Winter, of Lawrence, was with them on the briefs for appellee Board of County Commissioners of Douglas County.

*Roger K. Brown,* of Allen, Cooley & Allen, of Lawrence, was on the brief for appellee Board of City Commissioners of City of Lawrence.

*James M. Kaup,* general counsel, and *David L. Corliss,* attorney, were on the briefs for *amicus curiae* League of Kansas Municipalities.

The opinion of the court was delivered by

HERD, J.: This civil action for an injunction comes before the court upon rehearing. Pursuant to an order issued January 30, 1990, we withdrew our previous opinion in *Blevins v. Hiebert,* 245 Kan. 646, 783 P.2d 1260 (1989), and granted rehearing to examine further the full scope of our decision. Blevins appeals a district court order granting summary judgment to the Board of County Commissioners of Douglas County and denying an injunction.

The facts of this case have been fully set forth in *Blevins v. Hiebert,* 13 Kan. App. 2d 318, 770 P.2d 486 (1989). Due to the complexity of the case, however, the facts are here presented again in some detail.

On June 8, 1985, the Lawrence Journal World newspaper reported that the Douglas County Commissioners were considering a bond issue to help construct a by-pass highway south of Lawrence. County consultants publicly stated only $1,010,000 of the $4,000,000 needed in general obligation bonds for the by-pass could be issued without a mandatory vote of Douglas County voters. Subsequently, the Kansas Attorney General issued an opinion at the request of the County, which stated that the County plan to issue general obligation bonds for construction of the by-pass without a public vote was permissible under its home rule authority.

Thereafter, the Douglas County Board of County Commissioners adopted several ordinary resolutions on August 14, 1985, through use of its home rule powers. Resolutions No. HR 85-8-2 and No. 85-41 authorized construction of the highway system and the issuance of general obligation bonds to finance the highway. Resolution No. 85-43 authorized the issuance of $12,595,000 in General Obligation Refunding and Improvement Bonds, Series 1985, to refund the County's bonded debt and to pay for certain public improvements within the County, including $4,000,000 for construction of the by-pass highway. The bonds were issued and

the transaction closed on August 29, 1985. In 1986, the 1985 bonds were refunded and construction for the trafficway refinanced by the issuance of $13,590,000 in General Obligation Refunding and Improvement Bonds, Series 1986. Douglas County and the City of Lawrence adopted a joint resolution on September 1, 1987, concerning the construction of the South Lawrence Trafficway.

Leslie W. Blevins, Sr., a resident of Douglas County and property owner in the City of Lawrence, filed a lawsuit against Douglas County, the City of Lawrence, and individual members of their commissions on August 28, 1987. He asked for temporary restraining orders and for permanent injunctions preventing the City and County from proceeding with the South Lawrence Trafficway without submitting the proposal to a vote. Specifically, he asked that the County be restrained from spending the money from the bonds it had issued for the by-pass construction and that the City be restrained from taking steps to issue general obligation bonds for its share of the by-pass costs without submitting the issuance of the bonds for voter approval.

Douglas County filed a motion for summary judgment, and the City of Lawrence filed a motion to dismiss. The district court granted the City's motion to dismiss on February 4, 1988. The court found that Blevins had standing to sue and ruled that Douglas County issued the general obligation bonds properly under its home rule authority. Furthermore, the district court determined that Blevins' claim was barred by the doctrine of laches.

On February 16, 1988, Blevins filed a motion for a new trial, to alter or amend the judgment, and for reconsideration. This motion alleged that conflict of interest grounds existed which should have prevented the County from asserting the equitable defense of laches, and Blevins requested that the laches decision be amended. The district court denied Blevins' motion on April 28, 1988. Blevins appealed the district court's judgment and denial of his post-trial motion.

The Court of Appeals held the County legally issued the general obligation bonds under its ordinary home rule powers pursuant to K.S.A. 19-101a. *Blevins v. Hiebert,* 13 Kan. App. 2d at 321. The court found that K.S.A. 68-580 *et seq.* is a permissive statute and not the only method available for the County to authorize

construction of a highway. 13 Kan. App. 2d at 320-21. On the issue of the dismissal of the City of Lawrence, the court found that the issue had not been briefed on appeal and was therefore waived or abandoned. 13 Kan. App. 2d at 322. The Court of Appeals found no abuse of discretion by the district court in its finding that Blevins' claim was barred by laches, nor did it find an abuse of discretion by the district court in denying Blevins' post-trial motions attacking the laches determination. 13 Kan. App. 2d at 322-23. We granted review.

In this case the parties agree that the Dillon rule of municipal law (see *State, ex rel., v. City of Topeka*, 175 Kan. 488, Syl. ¶ 2, 264 P.2d 901 [1953]) was abolished by home rule. Thus, municipalities were freed from dependence upon the state legislature for local legislation. See *Claflin v. Walsh*, 212 Kan. 1, 6-7, 590 P.2d 1130 (1973); *Missouri Pacific Railroad v. Board of Greeley County Comm'rs.*, 231 Kan. 225, 643 P.2d 188 (1982) (county home rule powers). The parties also concede that legislative silence on a subject no longer prevents local government action. There is also accord on the principle that home rule is available to cities and counties in all areas of local government in which it is not prohibited by Article 12, § 5 of the Kansas Constitution or by K.S.A. 19-101a. Home rule is prohibited, however, where there is a statute uniformly applicable to all cities or counties, as the case may be.

Home rule is applicable in two other areas. The first is in the area of regulation and prohibition, where local government exercises its police power for the health, safety, and general welfare of the public. Local regulatory legislation is a special area of law governed by different rules than home rule; its origins precede both Article 12, § 5 of the Kansas Constitution and K.S.A. 19-101a.

The final area of the law available for home rule is where a statute is nonuniformly applicable to all cities or counties or to specific cities or counties. A municipality may opt out of such a law only by charter ordinance or charter resolution. Charter ordinances and resolutions are subject to petition and referendum. This affects the desirability of their use by municipal governments.

Let us first discuss home rule in police power regulatory situations.

We begin with an examination of *Claflin v. Walsh,* 212 Kan. 1. In that case, the City of Kansas City, Kansas, opted out of an applicable statute by charter ordinance. The statute authorized a board of trustees to manage the Soldiers' and Sailors' Memorial Building. The charter ordinance substituted the City Board of Commissioners for the Board of Trustees. The question presented was whether K.S.A. 73-407 was uniformly applicable to all cities. We held the statute was not uniformly applicable to all cities, thus authorizing the use of a charter ordinance. In arriving at that conclusion, we looked at the statute and other sections of Chapter 73. The related statutes had different provisions for the City of Winfield than for other cities and included many other nonuniform provisions. The statute clearly had no uniformity and fit squarely into the constitutional scheme for home rule by charter ordinance. In spite of the clear lack of uniformity, we made the following statements:

"[I]n determining whether a legislative enactment is applicable uniformly to all cities such a legislative intent should be clearly evident . . . . Even before the passage of the home rule amendment we held that legislative intent to reserve exclusive jurisdiction to the state to *regulate* must be manifested clearly by statute before it can be held that the state has withdrawn from cities power to regulate in the premises." *Claflin v. Walsh,* 212 Kan. at 7-8 (emphasis added).

Our discussion in *Claflin* pertaining to the law concerning a city's powers prior to home rule with regard to police power regulatory matters is dicta; *Claflin* is not a case involving a city's police power. No one questions, a city's power to legislate by ordinary ordinance in the exercise of its police power so long as such ordinance does not conflict with state law, unless a state statute specifically preempts the field. Our discussion in *Claflin* relied on *Ash v. Gibson,* 146 Kan. 756, 74 P.2d 136 (1937), where we held that, in the case of a uniform act regulating highways, a city can have its own non-conflicting traffic regulations unless the state statute prohibits it. *Blue Star Supper Club, Inc. v. City of Wichita,* 208 Kan. 731, 495 P.2d 524 (1972), stands for the same principle. *Blue Star Supper Club* involved the Kansas Liquor Control Act, which specifically prohibited cities from regulating the manufacturing and sale of liquor, and the Private Club Act which regulated the consumption of liquor on licensed prem-

ises. We held the Liquor Control Act preempted the field, but that the language of the Private Club Act with regard to consumption of liquor did not preempt the field by merely prohibiting ordinances in conflict or contrary to that act. We found no conflict where a city regulation was simply more strict than the provisions of the Private Club Act.

*City of Junction City v. Lee,* 216 Kan. 495, 532 P.2d 1292 (1975), follows the rationale of *Ash.* There, the defendant was convicted in municipal court for violation of a weapons control ordinance, an ordinance which pertained to the city's police power. We stated that concurrent city and state interest in a particular area is not an impediment to a city's exercise of authority unless the local ordinance conflicts with state legislation or the state has preempted the field. 216 Kan. at 498-99. The city ordinance in question prohibited a person from carrying a dangerous weapon, while the state statute made carrying a weapon a crime only when the weapon was concealed or carried with the intent to use unlawfully against another. We held that no conflict existed between the statute and ordinance because one did not forbid what the other permitted; rather, the ordinance was merely more restrictive than the statute. We also found there was no conflict by preemption since legislative intent to retain exclusive jurisdiction of weapons control was not clearly expressed. 216 Kan. at 502-03.

K.S.A. 21-3102, the statute at issue in *Lee,* provides: "(1) No conduct constitutes a crime against the state of Kansas unless it is made criminal in this code or in another statute of this state." We found the statute did not support a theory of preemption because "[t]he foregoing is simply codification of prior case law holding there are no common law crimes in Kansas—all crimes are statutory." 216 Kan. at 503. It should be noted that the statute was uniformly applicable to all cities. See also *Hutchinson Human Relations Comm. v. Midland Credit Management, Inc.,* 213 Kan. 308, 517 P.2d 158 (1973) (city ordinance designed to eliminate discrimination not in conflict with Kansas Act Against Discrimination); *Garten Enterprises, Inc. v. City of Kansas City,* 219 Kan. 620, 549 P.2d 864 (1976) (city ordinance regulating hours of consumption of alcoholic beverages and prescribing hours when club must be closed not in conflict with Liquor Control Act and

Private Club Act); *Leavenworth Club Owners Assn. v. Atchison,* 208 Kan. 318, 492 P.2d 183 (1971) (city ordinance regulating hours of consumption of alcoholic beverages that was more restrictive than the state statute, K.S.A. 41-2614, held valid); *Garden City v. Legg,* 126 Kan. 569, 268 Pac. 827 (1928) (city has authority to enact ordinance making drunkenness any place in the city an offense; no conflict with state drunkenness statute); *Kansas City v. Henre,* 96 Kan. 794, 153 Pac. 548 (1915) (city milk ordinance that fixed higher standard than required by state law a valid exercise of police power). See generally 56 Am. Jur. 2d, Municipal Corporations, Etc. § 424, p. 465 ("In those states where municipalities are specifically granted the right of local self-government by home-rule provisions of the state constitution, they are also often given the right to adopt and enforce within their limits such local police regulations as are not in conflict with general laws."); 56 Am. Jur. 2d, Municipal Corporations, Etc. § 374, p. 408. ("The mere fact that the state, in the exercise of the police power, has made certain regulations does not prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two, and the requirements of the municipal ordinance are not in themselves pernicious, as being unreasonable or discriminatory, both will stand.")

We conclude that a municipality has the right to legislate by ordinary ordinance or resolution non-conflicting local police power laws even though there are state laws on the subject uniformly applicable to all municipalities. This is a court-imposed exception to constitutional and statutory home rule. The legislature may prohibit such local authority by expressly preempting the field.

Confusion has arisen where the language used to preserve local police power predating home rule is applied to non-police power issues which are governed by constitutional and statutory home rule. We address this problem in our later discussion.

Let us now turn to the issue of an applicable statute which is not uniform. In *City of Junction City v. Griffin,* 227 Kan. 332, 607 P.2d 459 (1980), we considered this issue. There, Junction City opted out of the Code of Procedure for Municipal Courts, K.S.A. 12-4101 *et seq.* We recognized the clear legislative intent to provide a uniform procedure for municipal courts. 227 Kan. at 336. Nevertheless, we held legislative intent to preempt the

field was not justification for denying city home rule where the state law was not uniform. Junction City was thereby permitted to validly opt out of the nonuniform state law by charter ordinance. 227 Kan. at 336-37. Where a charter ordinance is used, local law may conflict with state law. Thus, we see that nonuniformity takes precedence over legislative intent in a case which does not involve the police power. This is a significant issue in the case at hand.

In *Missouri Pacific Railroad v. Board of Greeley County Comm'rs*, 231 Kan. 225, we considered county home rule for the first time. In that case, we applied our previous decisions on city home rule to counties, stating that they "appear to be similar and parallel each other in many particulars." 231 Kan. at 226. We proclaimed that counties are prohibited from passing local legislation which is contrary to or in conflict with a state statute uniformly applicable to all counties. We defined "in conflict" to mean that the local law prohibits what the state law permits, or, conversely, that the state law prohibits what local law permits. We went on to state that the legislature may reserve exclusive jurisdiction in a particular area by enacting a law of uniform application throughout the state, which thus manifests a clear intent to preempt the field. 231 Kan. at 227. We further stated:

"The rule denying power to a local body when the state has pre-empted the field is a rule of necessity based upon the need to prevent dual regulation which would result in uncertainty and confusion; and whether the state has pre-empted the field to the exclusion of local legislation depends not only on the language of the statutes, but upon the purpose and scope of the legislative scheme." 231 Kan. at 228.

In *Missouri Pacific Railroad,* the county ignored state laws as if the legislature were silent and passed its own ordinary resolution to prohibit the railroad from building a dust levee. 231 Kan. at 230-32. Local legislation cannot be contrary to or in conflict with state law, except when a charter resolution is applicable. K.S.A. 19-101a(b). We held the county ordinary resolution was in conflict with state law and therefore invalid. 231 Kan. at 233-34.

Finally, we review *Moore v. City of Lawrence,* 232 Kan. 353, 654 P.2d 445 (1982), where we found a city ordinance to be in conflict with a state statute. We held that the statute pertaining

to city planning and subdivision regulation was initially optional in that any city may create a planning commission. However, we concluded the statutes were intended to be uniformly applicable and binding on all cities which elected to adopt the planning commission procedure. Thus, we held a city which adopts the optional planning commission procedure is bound by a statute uniformly applicable, and the statute cannot be opted out of by charter ordinance or otherwise. See 232 Kan. at 356-57.

We now turn to the issue at hand to determine if, in light of the statutes and the foregoing cases, Douglas County validly exercised its home rule powers when it issued general obligation bonds by authority of an ordinary resolution to finance its share of the construction of the South Lawrence Trafficway.

The Arterial Highway Act, K.S.A. 68-580 *et seq.*, provides that a city and a county may designate certain highways as primary or secondary arterial highways and enter into cooperative agreements with the secretary of transportation, the county, and the city for the purpose of financing acquisition of rights-of-way for the construction, reconstruction, maintenance, and repair of such highways. The Act authorizes the use of any funds available and the issuance of general obligation bonds to pay for the cost of the construction. If the amount of funds needed exceeds 1/2% of the assessed tangible property valuation of the county or city, K.S.A. 68-584 provides:

"No bonds shall be issued under this section until the question of the issuance of the bonds is submitted to a vote of the electors of the county or city at a regular or special election called for that purpose and a majority of those voting shall have voted in favor of the issuance of the bonds." ·

The County needed $4,000,000. One-half percent of the valuation would produce $1,010,000.

Douglas County exercised its home rule powers pursuant to K.S.A. 19-101a(b) to authorize by ordinary resolutions the issuance of the needed general obligation bonds. A comparison of K.S.A. 68-580 *et seq.* and Douglas County Resolutions Nos. HR 85-8-2, 85-41, and 85-42 reveals the statute was copied in both form and substance except for changing the designation of the highway from "primary arterial" to "South Lawrence Trafficway" and omitting the provision for voter approval.

Douglas County maintains there is no state statute applicable to the peculiar traffic problem in the City of Lawrence and Douglas County; thus, it is authorized to craft its own financing scheme for its share of the by-pass highway by ordinary home rule resolution. The County claims that, since it did not exercise its option to designate the by-pass a primary or secondary arterial highway, it does not fall under K.S.A. 68-580 *et seq.*, and it is thus authorized to proceed under ordinary home rule resolution.

Douglas County also argues that an enabling act of the legislature without preemptive language such as "This statute is the exclusive source of authority, and home rule powers of counties (or cities) cannot be used" is a permissive statute and is purely optional to the municipality, leaving it free to legislate locally in this area as if the legislature were silent on this issue and without being contrary to or in conflict with the statute.

We disagree with this argument. If appellees were correct, it would render the home rule provision for a charter ordinance a nullity by permitting municipalities to treat state statutes as optional in the absence of specific preemptive language. The case law which gives rise to the argument that a state statute must make a positive statement of its intent to preempt a field comes from the rationales in *City of Junction City v. Lee,* 216 Kan. 495; *Hutchinson Human Relations Comm. v. Midland Credit Management, Inc.,* 213 Kan. 308; *Blue Star Supper Club, Inc. v. City of Wichita,* 208 Kan. 731; and *City of Garden City v. Miller,* 181 Kan. 360, 311 P.2d 306 (1957). All of those cases pertain to city police power regulations where city home rule predates Article 12, § 5 of the Kansas Constitution and K.S.A. 19-101a. The rule for such city regulation is at variance with constitutional and statutory home rule, as we have previously pointed out. An enabling act is uniformly applicable to all cities or counties if it authorizes all cities or counties to perform certain acts. Such statutes are state law and preempt the field of their application without the use of preemptive language unless there are express exceptions in the statutes or unless the statutes pertain to police power regulations. The Arterial Highway Act is not a police power regulation; thus, the controversy here is controlled by Article 12, § 5 and K.S.A. 19-101a(b). The Arterial Highway Act applies to all Kansas cities and counties—not uniformly, but

it is the state law. Municipalities have no right to overrule it except as authorized by the constitution and K.S.A. 19-101a. To rule otherwise would create a patchwork of autonomous municipalities throughout the state in which no one would know what law controlled. We readily acknowledge we must give the constitutional and statutory home rule provisions a liberal construction in order to provide both counties and cities the largest measure of self-government. However, that admonition does not entail ignoring constitutional and statutory home rule provisions.

Appellees' argument poses two additional questions. The first is whether the by-pass highway qualifies as an arterial highway. K.S.A. 68-151k defines county arterial highways as "essential and important routes or highways to connect with or to provide necessary access highways to or from the state highway system in such counties." The purpose of this proposed highway is to connect Kansas Highway 10 with U.S. Highway 40 and with the Kansas Turnpike. Obviously, this proposed by-pass is to be an arterial highway regardless of its name. The second question concerns the purpose of K.S.A. 68-580 *et seq.* The purpose of the Arterial Highway Act is to authorize general obligation bond financing of such highways by cities and counties in agreement with the department of transportation.

Since the purpose of K.S.A. 68-580 *et seq.* is to authorize the issuance of general obligation bonds for financing construction of an arterial highway, the use of a different name or failure to designate the highway a "primary arterial highway," though optional, does not alter the applicability of the statute. If general obligation bonds are needed, the statute is applicable. K.S.A. 68-580 *et seq.* is optional only in the sense that a municipality is not required to build an arterial highway and issue general obligation bonds to finance it. But if the municipality decides to build such a highway and issue general obligation bonds, then K.S.A. 68-580 *et seq.* is the authorized method. *Moore v. City of Lawrence,* 232 Kan. at 357, presents a similar situation. There, we stated: "While the application of the statutes may be optional, it is clear that once a city chooses to adopt this method the legislature intended for the statutes controlling the planning commission procedure to be binding." See also *Smith v. State High-*

*way Commission,* 185 Kan. 445, 447, 346 P.2d 259 (1959), where we held:

"The Commission argues that it is not obligated to acquire rights of access by eminent domain or as otherwise provided in 68-1903, *supra,* because this section of the statute uses the word 'may' with reference to the acquisition of the desired private or public property. This expression merely indicates that the highway authorities are not required to establish controlled access highways, but, if they do so, they may be acquired only as provided in the act."

It should be noted that K.S.A. 68-580 *et seq.* is not the exclusive method of financing an arterial highway and is inapplicable if any method of financing were sought by the County and City other than general obligation bonds. This statute pertains only to general obligation bond financing for such highways and is silent on other types of financing. As previously pointed out, where the legislature is silent, a municipality is free to carve out its own local solution to problems. K.S.A. 68-580 *et seq.* is applicable to general obligation bonds and applies to Douglas County and the City of Lawrence. The Act is not uniformly applicable statewide, since certain cities and counties are treated differently in K.S.A. 68-581a, thus entitling each entity to opt out by charter ordinance or resolution, as the case may be. This was not done here.

It should also be pointed out that K.S.A. 19-101a(b) authorizes home rule by ordinary resolution where there is no statutory authority and the local legislation is not contrary to any act of the legislature. The County resolutions which authorize the issuance of general obligation bonds to build the by-pass do not require a referendum and are in conflict with K.S.A. 68-584, which makes such a referendum mandatory if general obligation bonds valued at more than 1/2% of the assessed valuation of the County (here $1,010,000) are to be issued. Thus, the County has authorized what the State forbids. This is defined as a conflict in *Missouri Pacific Railroad v. Board of Greeley County Comm'rs,* 231 Kan. 225, 643 P.2d 188 (1982). The County's action is in violation of K.S.A. 19-101a(b), as well as *Missouri Pacific Railroad.* 231 Kan. at 227. The County should have followed K.S.A. 68-580 *et seq.* or opted out by charter resolution or ordinance.

That, however, does not dispose of this case. As we have noted throughout this opinion, there have been repeated indiscriminate references and citations by this court in prior opinions to cases involving city police power regulations, the law of which predated constitutional and statutory home rule. The rules pertaining to such regulations are at variance from the law under home rule, as pointed out previously. The use of those references and citations has caused confusion and misunderstanding in cases of constitutional and statutory home rule which do not pertain to city police power regulation. The misunderstanding has caused cities and counties to issue many millions of dollars of general obligation bonds in reliance thereon. Because of the confusion caused by the dicta in our prior decisions on home rule, we hold all general obligation bonds and temporary notes authorized or issued under home rule powers prior to the date of this opinion are hereby declared lawful and validated as to the home rule issue. All such bonds and temporary notes authorized and issued after the date of this opinion under home rule authority shall follow the procedure set out herein.

As we are making this decision prospective we find laches is not a defense to this action.

The judgments of the district court and of the Court of Appeals are affirmed.

HOLMES, J., concurs in the result.

SIX, J., not participating.

LOCKETT, J., concurring: The majority opinion fails to explain why this court, without a dissent, upon rehearing has reversed its prior decision in this case, which also was without a dissent. When originally briefed and argued, the issue to focus upon was whether a county, by merely designating a "secondary arterial highway" a "trafficway," could issue general obligation bonds to fund a highway project without using the procedure set out in K.S.A. 68-580 *et seq.* The motion for rehearing clearly indicated that the issue was much broader and that our decision affected not only the narrow issue decided but the limits of home rule and the methods of local government financing of highway projects.

I agree with the majority that home rule is available to cities and counties in all areas of local government in which it is not prohibited by Article 12, § 5 of the Kansas Constitution or K.S.A. 19-101a and in which there is a state statute uniformly applicable to all cities or counties. However, to reach its goal, the majority travels a new path of legal reasoning by rewriting the rationale of our prior decisions on local government exercise of police power and home rule. First, it states that, when reviewing concurrent legislation on police power regulations, the court has the power to impose exceptions to the constitution. The majority then determines that "[l]ocal regulatory legislation [the police powers] is a special area of law governed by different rules than home rule; its origins precede both Article 12, § 5 of the Kansas Constitution and K.S.A. 19-101a." The majority then finds that our prior home rule decisions which used the police power rationale as a basis for the decision are dicta. The majority then creates a new restriction to constitutional and statutory home rule, *i.e.*, the "enabling statute."

After denying what we have stated in the past about home rule, the majority creates a single equitable exception to a prohibited use of home rule power and approves Douglas County's financing of the South Lawrence Trafficway. The majority reasons that, because Douglas County relied on what it believed we had said in the past, it is all right for Douglas County to finance and build the trafficway this time, but no other cities or counties can ever again use that method of financing a similar highway I cannot agree with that rationale.

Both Article 12, § 5 of the Kansas Constitution, which grants cities the power of home rule, and K.S.A. 19-101a, which grants home rule to counties, state that the power granted is to be liberally construed to give local government the largest measure of self-government. *City of Junction City v. Griffin*, 227 Kan. 332, 607 P.2d 459 (1980). That requirement influenced this court's prior decisions on the power and scope of home rule.

K.S.A. 19-101a specifically sets out the prohibitions, restrictions, and limitations to county home rule powers. K.S.A. 19-101a provides in part:

"(1) Counties shall be subject to all acts of the legislature which apply uniformly to all counties.

". . . .

"(4) Counties shall be subject to acts of the legislature prescribing limits of indebtedness.

". . . .

"(9) Counties may not exempt from or effect changes in statutes made nonuniform in application solely by reason of authorizing exceptions for counties having adopted a charter for county government."

Limitations of debt, not the method of financing highways, are subject to the prohibitions of 19-101a. The sole remaining question is whether K.S.A. 68-581 uniformly applies to all counties.

A city or county ordinance should be permitted to stand unless an actual conflict exists between the ordinance and a statute, or unless the legislature has clearly preempted the field so as to preclude local governmental action. In determining whether a legislative enactment is uniformly applicable to all cities or counties, such legislative intent should be clearly evident before a city's or county's right to exercise home rule power in that area is denied. See *Moore v. City of Lawrence*, 232 Kan. 353, 654 P.2d 445 (1982). It is necessary to examine the provisions of the enactment to determine whether the constitutional and statutory standard of uniform application to all cities and counties has been met. If not uniform, legislative intent expressed within the enactment will not overcome the constitutional and statutory requirement for uniform application. See *Clark v. City of Overland Park*, 226 Kan. 609, 615, 602 P.2d 1292 (1979). The majority agrees that K.S.A. 68-580 *et seq.*, the Arterial Highway Act, is not uniform.

K.S.A. 68-581 states:

"68-581. Same; primary arterial highways; designation and financing. By resolution the board of any designation and financing. designation and financing. county *may* designate as a primary arterial highway: (1) All or any portion of an existing or proposed new county road or highway; or (2) all or any portion of an existing or a proposed new street within a city in such county which is or would be an extension of a county road or a connecting link between county roads. Such resolution *shall* set out the primary arterial highway designation and its location, a general description of the proposed improvement and an estimate of the total cost thereof, exclusive of any grants from any other public agency. Upon the adoption of such resolution, a copy thereof attested by the county clerk *shall*, if such designation is of a city street, be transmitted to the city clerk of each city wherein such primary arterial highway is located or is proposed to be located. The res-

olution *shall* become effective upon publication by the county in its official newspaper.

"The board and the governing bodies of all cities in which any primary arterial highway is located or is proposed to be located *may* enter into an agreement providing for the cooperative financing of the acquisition of right-of-way for and the construction, reconstruction, maintenance and repair of such proposed primary arterial highway, including major bridges and overpasses thereon, together with all engineering costs, under such terms as the board and governing bodies shall agree upon. Such agreement *may* be part of an agreement between the secretary of transportation, the county and the cities.

"The board and governing body of any city wherein any portion of such primary arterial highway is to be located *may* use any public funds available to such county or city for the construction, reconstruction, maintenance or repair of such primary arterial highway, including major bridges and overpasses thereon, in like manner as if it were a normal county road or a city street, and the board and the governing body of each such city *may* issue bonds as provided in K.S.A. 68-584. Whenever any such bonds are issued, either with or without a referendum, the board or governing body issuing the same *may* use the moneys received from the distribution of motor-fuel tax revenues pursuant to K.S.A. 79-3425c, and any amendments thereto, to pay all or part of the principal and interest on such bonds. In the event that such moneys are insufficient to retire such bonds, an annual tax shall be levied upon the taxable tangible property in such county or city in an amount sufficient to pay the principal of and interest on said bonds." (Emphasis added.)

The K.S.A. 68-581 method of financing the trafficway is not prohibited by 19-101a; it provides alternative methods of proceeding under the statute and is not the only statutory method by which a county can finance an arterial highway. We have recognized in the past the fact that there is state legislation other than home rule legislation which the county might have used does not mean the county cannot legislate on the same subject as long as it does not conflict with state law. *City of Garden City v. Miller*, 181 Kan. 360, 366, 311 P.2d 306 (1957). A plain reading of 68-581 reveals no indication of legislative intent to make its provision exclusive. Douglas County properly exercised its home rule power when entering into the agreements and authorizing the bonds to finance the trafficway.

The majority makes the broad statement: "An enabling act is uniformly applicable to all cities or counties if it authorizes all cities or counties to perform certain acts. Such statutes are state law and preempt the field of their application without the use of

preemptive language . . . ." Such a statement opens Pandora's box and casts dark shadows on past acts of cities and counties that relied on the language of our prior decisions.

The majority of legislation confers power to act. Are all such legislative acts "enabling acts," preempting home rule? If so, except where the legislature is silent, a local unit of government's exercise of its home rule power is reduced to the use of charter ordinances.

PAUL MILLER, District Judge, assigned, joins the foregoing concurring opinion.