No. 64,181

EUGENE C. HERRMANN and CHARLES E. OURSLER, *Appellants,* v. BOARD OF COUNTY COMMISSIONERS OF BUTLER COUNTY, KANSAS, *Appellees,* and STATE OF KANSAS, *ex rel.* Robert T. Stephan, *Intervenor-Appellee.*

(785 P.2d 1003)

Opinion filed January 19, 1990.

*Robert D. Myers,* of Robert D. Myers, P.A., of Newton, argued the cause and was on the brief for appellants.

*Norman G. Manley,* of Davis & Manley, of El Dorado, argued the cause and was on the brief for appellees.

*Carl A. Gallagher,* assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for intervenor/appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is an action by two area landowners challenging the issuance by the Butler County Board of County Commissioners (Board) of a special use permit allowing construction of a state-owned prison facility. The State of Kansas intervened in the action. The State filed a motion for summary judgment, contending it was immune from county zoning regulations. The district court granted partial summary judgment to the State. Specifically, the court held that the State had immunity from zoning regulations, but that its immunity was not absolute. The burden was placed on the landowners to show the conduct of the State was arbitrary. Thereupon, the landowners stated they did not intend to litigate the reasonableness of the State's decision to build the prison on the land involved herein and filed their notice of appeal.

For their first issue, the appellant landowners contend it was improper to permit the State to raise the immunity question based upon compelling state interest. They contend the State is precluded from raising this defense in the district court by virtue of not having raised the issue before the controversy reached the district court.

In early 1989, the owners of the real estate on which the State plans to build the prison filed an application for the issuance of a special use permit to authorize such usage. The property was zoned "A-2", agricultural transition.

On March 9, 1989, the Butler County Planning Board met in special session to conduct a public hearing on the application.

Following a hearing in which citizens spoke in favor of and against the special use application, the planning board voted 4-3 in favor of the application.

On March 27, 1989, the Butler County Board of County Commissioners unanimously adopted Resolution No. 89-833, which granted the special use permit for the construction of the prison facility.

On April 26, 1989, plaintiffs filed this action against the Board, alleging: (1) that the Board's decision was unreasonable, arbitrary, and capricious; (2) that the use permitted (construction of a prison) was not an eligible use for a special use permit under an "A-2" zoning classification; and (3) that before the public hearing on the application, the Board predetermined it would issue the permit.

The Board answered that the Butler County zoning regulations authorized a special use permit within an A-2 zoning district for "public buildings erected [on] land used by any agency of a city or the county or state government." The Board further contended that the proposed use of the land rendered the property exempt from local zoning regulations.

Prior to suit being filed the matters in controversy had been the pros and cons of issuing the special use permit and the Board's authority to issue such a permit.

On May 18, 1989, House Bill 2548 (L. 1989, ch. 31, § 1-11) was signed by the governor. Said bill provided funding for the new prison and stated, in pertinent part:

"Sec. 4. The legislature finds and hereby declares that the prompt and expeditious initiation and completion of the capital improvement projects for a new correctional facility and a mental health facility or facilities is a matter of compelling public interest and is necessary to protect the public safety of the residents of Kansas because of the large and increasing inmate population in the custody of the secretary of corrections and because of the actions mandated by the orders of the United States District Court of Kansas in *Arney, et al. vs. Hayden, et al.*, Case No. 77-3045."

Four days later, on May 22, 1989, the State's motion to intervene was filed. The motion stated as its grounds for intervention that there was a compelling public and state interest in the construction of the prison, and that such interests could not be adequately represented by defendant Board.

Intervention of right is controlled by K.S.A. 60-224(a)(2), which provides:

"(a) *Intervention of right.* Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter substantially impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

K.S.A. 60-224(a) should be liberally construed in favor of intervention. *In re Petition of City of Shawnee for Annexation of Land,* 236 Kan. 1, 11, 687 P.2d 603 (1984); *Campbell American Legion v. Wade,* 210 Kan. 537, Syl. ¶ 1, 502 P.2d 773 (1972). The right to intervene in an action is dependent on the occurrence of three factors: (1) timely application; (2) substantial interest in the subject matter; and (3) inadequate representation of the applicant-intervenor's interest. *In re Petition of City of Shawnee for Annexation of Land,* 236 Kan. at 11; *Hukle v. City of Kansas City,* 212 Kan. 627, 630, 512 P.2d 457 (1973). A motion to intervene is a matter addressed to the court's discretion. *American States Ins. Co. v. Hartford Accident & Indemnity Co.,* 218 Kan. 563, 573, 545 P.2d 399 (1976).

Here, clearly, all three factors authorizing intervention were met. The State moved with rather amazing speed (four days) after the construction of the prison was given the green light and declared to be a matter of compelling state and public interest. The motion was filed less than a month after the petition herein was filed. Further, the legislature itself declared the compelling interest. Also, the Board, defending primarily on the merits of issuance of the special use permit, was not in the position to adequately represent the State. Certainly, the arrival of the State onto the scene greatly altered the nature of the litigation, but that is no cause to deny intervention under the circumstances herein. We find no abuse of discretion in the district court's granting of the motion to intervene and permitting the State to assert the immunity claim based upon a compelling public and state interest.

For their next issue, the appellant landowners challenge the entry of partial summary judgment in favor of the State. Their

arguments in this regard are askew as they treat the summary judgment as being considerably broader than it was. The district court held that the State was immune from zoning regulations where a compelling state interest was involved such as building a prison under a federal mandate. The immunity was not unlimited, however, as the State could not act in an arbitrary manner. Whether or not the landowners could show the State was acting arbitrarily in its decision to build the prison on this particular site was to be resolved by trial. The landowners then advised the Court they were conceding the State had acted reasonably. This concession cleared the way for their appeal herein as a matter of right from a final judgment as opposed to seeking an interlocutory appeal on a partial summary judgment. However, appellant landowners herein seek to challenge the partial summary judgment on the basis the district court improperly granted summary judgment because the State did not present adequate evidence that there was a compelling state interest to construct the prison on this particular site. The trial court entered no summary judgment on this aspect of the litigation as it contemplated a trial would be held to determine whether or not the State's decision to construct the prison on this site was arbitrary. When the appellant landowners conceded that the State was acting reasonably in its determination that the prison be built on this site, they effectively removed any district court determination of the reasonableness of the State's actions as to this particular site or appellate review relative thereto. All we have before us is a question of law relative to whether or not the district court erred in holding the State has immunity from zoning regulations subject to judicial review for arbitrary usage of the immunity. We turn now to that limited issue.

In making its decision, the district court relied upon *Brown v. Kansas Forestry, Fish and Game Commission*, 2 Kan. App. 2d 102, 576 P.2d 230 (1978). In *Brown*, the defendant Commission had purchased land in a residential area for construction of a parking lot and toilet facilities for usage of patrons utilizing the adjacent Big Blue recreation facility. Some area landowners objected to the construction and brought the action challenging the Commission's authority to proceed with a construction program contrary to the zoning regulations in effect.

The Court of Appeals, in *Brown*, noted that this was an issue of first impression in Kansas but that courts in a number of other jurisdictions had resolved similar issues on a variety of rationales. The Court of Appeals' scholarly discussion of the issue is sound and little would be gained from including the same herein in toto. To summarize the Court of Appeals' opinion, it held that the common thread in these decisions was that the State had at least some degree of immunity from local zoning regulations, but that the exercise of that immunity was not absolute. Some type of judicial review was necessary to assure the State did not act arbitrarily. The Court of Appeals then adopted the "balancing of interests" test first enunciated in *Rutgers v. Piluso*, 60 N.J. 142, 150-54, 286 A.2d 697 (1972), citing therefrom as follows:

" 'The question of what governmental units or instrumentalities are immune from municipal land use regulations, and to what extent, is not one properly susceptible of absolute or ritualistic answer. Courts have, however, frequently resolved such conflicts in perhaps too simplistic terms and by the use of labels rather than through reasoned adjudication of the critical question of which governmental interest should prevail in the particular relationship or factual situation. . . .'

. . . .

" 'The rationale which runs through our cases and which we are convinced should furnish the true test of immunity in the first instance, albeit a somewhat nebulous one, is the legislative intent in this regard with respect to the particular agency or function involved. That intent, rarely specifically expressed, is to be divined from a consideration of many factors, with a value judgment reached on an overall evaluation. All possible factors cannot be abstractly catalogued. The most obvious and common ones include [1] the nature and scope of the instrumentality seeking immunity, [2] the kind of function or land use involved, [3] the extent of the public interest to be served thereby, [4] the effect local land use regulation would have upon the enterprise concerned and [5] the impact upon legitimate local interests. . . . In some instances one factor will be more influential than another or may be so significant as to completely overshadow all others. No one, such as the granting or withholding of the power of eminent domain, is to be thought of as ritualistically required or controlling. And there will undoubtedly be cases, as there have been in the past, where the broader public interest is so important that immunity must be granted even though the local interests may be great. The point is that there is no precise formula or set of criteria which will determine every case mechanically and automatically.'

. . . .

" 'It is, however, most important to stress that such immunity in any situation is not completely unbridled. Even where it is found to exist, it must not, as this court said in *Washington Township v. Village of Ridgewood, supra* (26 N.J. at 584-586, 141 A.2d 308), be exercised in an unreasonable fashion so as to arbitrarily override all important legitimate local interests. This rule must apply to the state and its instrumentalities as well as to lesser governmental entities entitled to immunity. For example, it would be arbitrary, if the state proposed to erect an office building in the crowded business district of a city where provision for off-street parking was required, for the state not to make some reasonable provision in that respect. And, at the very least, even if the proposed action of the immune governmental instrumentality does not reach the unreasonable stage for any sufficient reason, the instrumentality ought to consult with the local authorities and sympathetically listen and give every consideration to local objections, problems and suggestions in order to minimize the conflict as much as possible. . . .' " 2 Kan. App. 2d at 106-07.

The Court of Appeals then applied the balancing of interests test and held the construction of a recreational convenience facility should be determined through regular zoning procedures.

We agree that the balancing of interests test is an appropriate means of resolving questions of a state's immunity from zoning regulations.

In its memorandum decision the district court reasoned as follows:

"In *Brown* the state agency was attempting to build a parking lot and restroom facilities in a residential area near Manhattan—hardly a matter of statewide concern. In the present case the state agency desires to build a large correctional facility in order to comply with a federal court order or face the consequences of the release of approximately 1000 prison inmates and the likelihood that a Special Master would be appointed to operate the state's correctional system. The proposed construction site is on 600 acres of upland pasture approximately one mile east of El Dorado.

"Applying the 'balancing of interests' test it would be difficult to find more compelling reasons for granting immunity to the state than those established by the facts of this case. (1) The instrumentality seeking immunity is the state, and, as is stated in *Brown*, its judgment is entitled to considerable deference. (2) The general function performed is of statewide concern. In a rather unusual provision the legislature, in H.B. 2548, stated:

'Sec. 4. The legislature finds and hereby declares that the prompt and expeditious initiation and completion of the capital improvement projects for a new correctional facility and a mental health facility or facilities is a matter of compelling public interest and is necessary to protect the public safety of the residents of Kansas because of the large and increasing inmate population in the custody of the secretary of corrections and

because of the actions mandated by the orders of the United States District Court of Kansas in *Arney, et al. vs. Hayden, et al.* Case No. 77-3045.'

(3) There is statewide public interest in the construction of a new prison. The mandate of Judge Rogers in *Arney v. Hayden* leaves no doubt that the state must construct additional prison facilities or release numbers of prison inmates in order to relieve the overcrowded conditions in existing facilities. (4) Local regulation could conceivably result in the state being required to build a prison in another location, such as Concordia or Russell, with no certainty that similar legal issues would not be raised in those communities. Delays in construction will be costly to the state and may result in the federal court taking control of the state's correctional facilities. (5) It appears from the evidence presented to the Planning Board that the construction of a prison on the proposed site would not have a significant adverse [effect] on legitimate local interests. To the contrary there was much support for the construction project as it would provide a considerable economic benefit to the citizens of El Dorado, Butler County, and the surrounding area.

. . . .

"For the reasons herein stated the Court finds that the evidence presented by the state establishes its right to immunity from the zoning regulations of Butler County. The grant of immunity is not absolute; it places the burden on the landowners to prove that the conduct of the state was arbitrary. Had the grant of immunity been denied the burden would have been placed on the state to follow the local regulations for rezoning."

We agree with the district court that it would be difficult to create a scenario demonstrating a greater compelling state or public interest than that shown herein. Construction of a prison is, by itself, a major project of compelling state interest. Here the action is made even more compelling by a federal judge snapping at the State's heels to require the new construction or face a court-ordered release of a large number of felons, many of whom would pose a significant threat to Kansas citizens. Additionally, we have a legislative enactment declaring the construction of the prison to be a matter of compelling public interest and necessary to protect the public safety. The following proposed amendment to House Bill 2548 should also be noted:

" 'Sec. 4. Before any new correctional facility is constructed in any county, the State or a public or private entity proposing to construct the facility shall publish a public notice of intent to construct the facility in the county. The public notice shall contain a complete description of the proposed construction project, the location of the proposed facility, the maximum number of inmates to be confined in the facility and other information relating to the proposed facility as necessary to comply with the public

notice requirements of this section. The public notice shall be published once a week for two consecutive weeks in a newspaper having general circulation in the county in which such building or facility is proposed to be located. If within 30 days after the last date of publication of the public notice a petition in opposition to the proposed facility, signed by not less than 10% of the electors of the county in which such building or facility is proposed to be located, is filed with the county election officer, the board of county commissioners shall submit the question to the voters of the county at an election called for that purpose. No construction contract shall be let or approved by the public or private entity for construction of such proposed building or facility until after the expiration of the protest period provided under this section; or, if an election is called under this section, until after the results of such election are known. If an election is called and the majority of the voters at such election vote against the location of such building or facility in the county, then such proposed building or facility shall not be constructed in the county.'; and by renumbering sections accordingly." Sen. J. 1989, p. 752.

The amendment was defeated, which could be construed to reflect a legislative intent that local opposition to construction of the prison should not delay or prevent such construction.

We conclude the district court properly applied the balancing of interests test in holding that the State was immune from local zoning regulations. As previously stated, inasmuch as the appellant landowners have conceded the State's actions were reasonable, no issue remains as to whether or not the State's decision to build the prison on this particular site was arbitrary.

The judgment is affirmed.