James Kaup, Counsel Marion County Board of Commissioners 700 Jackson Street Topeka, Kansas 66603
Dear Mr. Kaup:
As legal counsel for the Marion County Board of Commissioners, you inquire whether the Board can establish a recycling program and impose a charge for that service. Specifically, you inquire whether such a program is authorized by the Solid and Hazardous Waste Act, K.S.A. 65-3401 etseq. If the Act does not apply, you inquire whether the County can use its home rule authority pursuant to K.S.A. 19-101 et seq. or its police power.
Your edited queries are as follows:
1. Does the Solid and Hazardous Waste Act authorize the county toimpose a charge for a recycling program pursuant to K.S.A. 65-3410?
The Solid and Hazardous Waste Act (Act) is designed to protect the health and welfare of the citizens of Kansas by requiring the safe and sanitary disposal of solid wastes by establishing cooperative state and local programs for solid waste management, utilizing private enterprises in solid waste management programs, requiring permits for the operation of solid waste processing and encouraging "the wise use of resources through development of strategies that reduce, reuse and recycle materials."[1]
"Solid waste" is defined at K.S.A. 1999 Supp. 65-3402 and specificallyexcludes "recyclables" which are defined as "any material that will be used or reused, or prepared for use or reuse, as an ingredient in an industrial process to make a product, or as an effective substitute for a commercial product." Recyclables include, among other things, paper, glass, plastic, and metal.[2]
K.S.A. 65-3410 authorizes counties to "provide for the storage, collection, transportation, processing and disposal of solid wastes" and allows a fee for such service according to the requirements in K.S.A.65-3410. Delinquent fees can be assessed against the property and collected in the same manner as property taxes.[3]
K.S.A. 65-3410 was enacted in 1970 and last amended in 1974. The concept of recyclables was recognized by the Legislature in 1992 when the definition of "solid waste" was amended to specifically exclude "recyclables."[4] K.S.A. 65-3410 remained unchanged and, therefore, while this statute provides authority for counties to establish solidwaste programs that assess delinquent fees against property, K.S.A. 65-3410
is not authority for a county to establish a recycling program and charge a fee that, if delinquent, can be assessed against property and collected in the same manner as property taxes.
2. If K.S.A. 65-3410 cannot be used, may a county use its home rulepower to establish a recycling program that includes imposing a fee forthe service and assessing delinquent fees against the property which canthen be collected in the same manner as property taxes?
You indicate that the Marion County Board of Commissioners would like to enact a resolution establishing a recycling program and imposing a fee similar to the fee for solid waste authorized by K.S.A. 65-3410. As previously indicated, K.S.A. 65-3410 imposes a mandatory charge for solid waste service with a provision that allows delinquent fees to be assessed against the property and collected in the same manner as property taxes.
A county's home rule powers are set forth in K.S.A. 1999 Supp.19-101a:
 "(a) The board of county commissioners may transact all county business and perform all powers of local legislation and administration it deems appropriate, subject only to the following limitations, restrictions or prohibitions:
 "(1) Counties shall be subject to all acts of the legislature which apply uniformly to all counties.
 "(b) Counties shall apply the powers of local legislation granted in subsection (a) by resolution of the board of county commissioners. If no statutory authority exists for such local legislation other than that set forth in subsection (a) and the local legislation is not contrary to any act of the legislature, such local legislation shall become effective upon passage of a resolution of the board and publication in the official county newspaper."
Other than the requirement in the Solid and Hazardous Waste Act that counties include a provision in their solid waste management plans to reduce waste through recycling, there are no statutes that address county recycling. Therefore, because legislative silence on a subject no longer prevents local government action,[5] it is our opinion that a county may use its home rule power to enact a resolution establishing a recycling program.
Insofar as the imposition of a recycling charge is concerned, you inquire whether a county must utilize K.S.A. 19-117 which sets forth a procedure for counties to follow when imposing certain fees:
 "(a) Where the board of county commissioners of any county by resolution proposes to levy for revenue purposes any tax, excise, fee, charge or other exaction other than permit fees or license fees for regulatory purposes, a procedure for the levy of which is not otherwise prescribed by enactment of the legislature, such resolution shall require a two-thirds (2/3) vote of the members of the board and shall be published once each week for two (2) consecutive weeks in the official county newspaper.
 "No such resolution shall take effect until sixty (60) days after its final publication, and if within sixty (60) days of its final publication a petition signed by not less than five percent (5%) of the qualified electors of the county shall be filed with the county election officer demanding that such resolution be submitted to a vote of the electors, it shall not take effect until submitted to a referendum and approved by a majority of the electors voting thereon. The board of county commissioners of any county may submit any resolution providing for such levy to a referendum without petition. Resolutions authorizing such levies submitted to referendum without petition may be passed by a majority vote of the board of county commissioners and shall be published once in the official county newspaper . . . "
Prior to the decision in Blevins v. Hiebert,[6] the appropriate analysis for determining whether a county was required to comply with a particular statute rather than locally legislating alternative procedures was whether the Legislature, by enacting a uniform statute, intended to preempt a county's ability to act without complying with the statute:
 "Counties are prohibited, however, from passing any legislation which is contrary to or in conflict with any act of the state legislature which is of uniform application to all counties throughout the state. K.S.A. 19-101a(a) .
 "The legislature may reserve exclusive jurisdiction to regulate in a particular area when an intent is clearly manifested by state law to pre-empt a particular field by uniform laws made applicable throughout the state.
 "The rule denying power to a local body when the state has pre-empted the field is a rule of necessity based upon the need to prevent dual regulation which would result in uncertainty and confusion; and whether the state has pre-empted the field to the exclusion of local legislation depends not only on the language of the statutes, but upon the purpose and scope of the legislative scheme." (Emphasis added).[7]
In the absence of specific preemptive language, it was sometimes difficult to determine whether the Legislature intended to preempt the field so as to preclude cities and counties from legislating in an area that the state regulated:
 "The legislature with some frequency has pre-empted home rule by passage of uniform laws that also contain preemptive language. Some uniform laws, however, do not need to contain any pre-emptive language because, by simply prohibiting actions like the levy of certain types of tax or the licensure or regulation of certain activities, they expressly forbid local action in the area. The primary areas where preemption exists are in the levy of taxes, excises, fees, charges and other exactions, and in the area of licensing and regulatory activities."[8] (Emphasis added.)
In Jennings v. Walsh,[9] the Court concluded that the Water Pollution Act[10] preempted the field in the area of sewer charges because there were "specific uniform statutes [that occupied] the subject field."[11]
In Missouri Pacific Railroad v. Board of Greeley County Comm'rs[12] the Court invalidated a resolution on the grounds that it conflicted with a uniform statute and because the state "[had] evidenced a purpose and design to occupy the field so as to prohibit additional regulation by local authorities in the same area."[13]
The Blevins decision concluded that uniformly applicable statutes that authorize municipalities to perform certain acts are preemptive without the use of express preemptive language, but that a municipality could nevertheless legislate in the area if exercising its police power in a way that does not conflict with a statute that "pertains to police power regulation." However, the Legislature could prevent a municipality from exercising its police power if it expressly preempted the field:
 "An enabling act is uniformly applicable to all cities or counties if it authorizes all cities or counties to perform certain acts. Such statutes are state law and preempt the field of their application without the use of preemptive language unless there are express exceptions in the statutes or unless the statutes pertain to police power regulations."[14] (Emphasis added.)
 Blevins concluded that if a statute authorizes all cities or all counties to perform certain acts, such statute is uniformly applicable and impliedly preempts the field, precluding a municipality from legislating [except in accordance with the statute] unless the statute pertains to the police power. If the enabling statute "pertains to the police power," then the municipality may enact non-conflicting ordinances or resolutions. The Legislature may prohibit a municipality's exercise of its police power only by expressly preempting the field.[15]
In Blevins, Leslie Blevins sued Douglas County and the City of Lawrence to prevent further expenditure of bond funds for construction of a by-pass highway unless the proposal was first submitted to the voters pursuant to the requirements of the Arterial Highway Act. This Act specifically authorized the issuance of bonds subject to an election. The Kansas Court of Appeals held that the Arterial Highway Act was permissive and did not preclude the County from using its home rule power to utilize a different method for constructing the highway.
Blevins argued that the County was bound by the Act and that voter approval was required before the bonds could be issued. He contended that since the county resolution conflicted with the Act, the County should have chartered out of the nonuniform Act. The Kansas Supreme Court agreed and concluded that a municipality cannot exercise ordinary home rule in a non-police power context if there is enabling legislation that applies to all cities or counties.
Cases decided subsequent to Blevins have not consistently followed its conclusions on implied preemption.[16] In Dillon Stores v. Lovelady,[17] taxpayers argued that the State had preempted the area of property tax through the adoption of uniform laws thus precluding a county from retaining an accounting firm to assist the county appraiser in analyzing reported amounts of tangible personal property. The Court, citing pre-Blevins cases, concluded that legislative intent to reserve exclusive jurisdiction had to be "manifested clearly by statute before it can be held that the state has withdrawn . . . the power to regulate"[18] and that the State had not expressly prohibited counties from receiving assistance from accounting firms concerning unreported personal property.
In Executive Aircraft Consulting, Inc., v. The City of Newton,[19]
the Court concluded that "a city or county ordinance should be permitted to stand unless an actual conflict exists between the ordinance and a statute, or unless the legislature has clearly preempted the field so as to preclude local . . . action."[20] The Court found that a uniform statute prohibiting municipalities from imposing an aviation fuel tax evidenced "a strong legislative intent to preempt local units of government from collecting [such] revenue" thus precluding a municipality from imposing a fuel flowage fee.
We note that regardless whether a Court would apply a Blevins
preemption analysis or a pre/post-Blevins preemption analysis to Marion County's recycling fee, it is our opinion that the result under either analysis would require the County to follow the procedures established in K.S.A. 19-117.
K.S.A. 19-117 was enacted in 1977 after a Legislative interim study committee reviewed the available sources of city and county revenue.[21]
The committee found that a major source of revenue was "user charges" for cities and counties that offered services such as trash collection.[22]
However, the committee noted that there were no legislative guidelines concerning how counties could impose such charges under home rule. The committee recommended to the Legislature that counties use a procedure similar to the procedure used by cities to impose fees for services.[23]
The Legislature concurred with the committee and enacted K.S.A. 19-117. Attorney General Robert T. Stephan subsequently concluded that K.S.A.19-117 is uniformly applicable to all counties.[24]
The Blevins police power/express preemption analysis arguably applies if K.S.A. 19-117 is a statute "that pertains to the police power." It is our opinion that K.S.A. 19-117 is not a statute "that pertains to the police power" because of its similarity to the statute that the Blevins
Court determined was not a police power regulation. The Arterial Highway Act that was considered in Blevins provided that if a county issued bonds to finance the construction of certain highways, the county must follow certain procedures, including holding an election. Likewise, K.S.A. 19-117
provides that if a county proposes to levy a tax, fee, or any charge for revenue purposes, it must follow certain procedures including holding an election if a valid petition is filed.
If a court, applying a Blevins analysis, determined that K.S.A. 19-117
does not pertain to the police power, then it would find that Marion County must comply with the statute because K.S.A. 19-117 is a uniform enactment applicable to all counties and, therefore, preempts the field without the use of express preemptive language. However, if a court, applying a Blevins analysis, determined that K.S.A. 19-117 is a statute that pertains to the police power, such court could find that K.S.A. 19-117
is a statute that uniformly applies to all counties and evidences an intent to require that counties follow certain procedures for imposing fees for revenue purposes. Consequently, any resolution imposing a recycling fee without complying with K.S.A. 19-117 would be invalid because it would conflict.
If a court selected a pre/post Blevins preemption analysis, we believe the court would find that K.S.A. 19-117 is a statute that uniformly applies to all counties and evidences an intent to require that counties follow certain procedures for imposing fees for revenue purposes. Consequently, any resolution imposing a recycling fee without complying with K.S.A. 19-117 would be invalid because it would conflict. Thus, regardless whether a court would apply a Blevins analysis or not, it is our opinion that a county must comply with K.S.A. 19-117 if it intends to impose a recycling fee.
You also inquire whether delinquent recycling fees may be assessed against real property and collected in the same manner as ad valorem
taxes.
Our research detected no statutes that address a county placing delinquent recycling fees on the property tax rolls and, therefore, a county is free to use its home rule power to enact a resolution that establishes a recycling fee pursuant to K.S.A. 19-117 and assess delinquent fees against real estate which can then be collected in the same manner as property taxes.
We note also that K.S.A. 79-1801 requires all taxing subdivisions to certify to the county clerk the amount of property tax to be levied. The clerk places the taxes on the county's tax roll, collects the taxes and then distributes "the proceeds of the taxes levied by each taxing subdivision in the manner provided by K.S.A. 12-1678a." K.S.A. 1999 Supp. 12-1678a provides, in part:
 "(a) For the purposes of this section, taxes shall include ad valorem property taxes, local gross earnings taxes, special assessments and all other taxes and fees collected with or at the same time as ad valorem property taxes." (Emphasis added.)
In Attorney General Opinion No. 84-105, Attorney General Robert T. Stephan concluded that K.S.A. 79-1801 and 12-1678a require a county clerk to place delinquent utility charges that constituted a lien on real property upon the tax rolls where an ordinance provided for certification and collection "in the same manner as taxes levied against property."
3. Can a county use its police power to impose a fee for a countywiderecycling service?
As we indicated previously, even assuming that a resolution imposing a recyling fee is an exercise of the police power and that police power is a source of authority independent of home rule, it is our opinion that a county must follow the procedure set forth in K.S.A. 19-117 because the latter is a statute that uniformly applies to all counties and evidences an intent to require that counties follow certain procedures for imposing fees for revenue purposes. Consequently, any resolution imposing a recycling fee without complying with K.S.A. 19-117 would be invalid because it would conflict with the statute.
Summarizing, it is our opinion that the Solid and Hazardous Waste Act, K.S.A. 65-3401 et seq. does not authorize counties to establish a recycling program and impose a charge for such service. However, a county may use its home rule power pursuant to K.S.A. 19-101a et seq. to establish a recycling program that includes imposing a charge for the service and assessing delinquent fees against the property, provided the county complies with K.S.A. 19-117. Finally, assuming that a resolution imposing a recyling fee is an exercise of the police power and that police power is a source of authority independent of home rule, it is our opinion that a county must follow the procedure set forth in K.S.A. 19-117
because the latter is a statute that uniformly applies to all counties and evidences an intent to require that counties follow certain procedures for imposing fees for revenue purposes. Consequently, any resolution imposing a recycling fee without complying with K.S.A. 19-117
would be invalid because it would conflict with the statute.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm
[1] K.S.A. 1999 Supp. 65-3401.
[2] K.S.A. 65-3402(r).
[3] K.S.A. 65-3410(a)(4).
[4] L. 1992, Ch. 316, § 2.
[5] Blevins v. Hiebert, 247 Kan. 1, 5 (1990). See also Junction Cityv. Lee, 216 Kan. 495, 498 (1975).
[6] Id.
[7] Missouri Pacific Railroad v. Bd. of Greeley County Comm'rs,231 Kan. 225, 227 (1982).
[8] Heim, Home Rule Power for Cities and Counties, 66 Journal of the Kansas Bar Association, pg. 26, 35 (1997).
[9] 214 Kan. 398 (1974).
[10] K.S.A. 12-3101 et seq.
[11] Johnson County Water Dist. No. 1 v. City of Kansas City,255 Kan. 183, 193 (1994).
[12] 231 Kan. 225 (1982).
[13] 231 Kan. at 233.
[14] 247 Kan. at 11.
[15] 247 Kan. at 6-8.
[16] But see Board of Trego County Comm'rs v. Kansas Dept. of Revenue,261 Kan. 927 (1997).
[17] 253 Kan. 274 (1993).
[18] 253 Kan. at 279.
[19] 252 Kan. 421 (1993).
[20] 252 Kan. at 425.
[21] Report on Kansas Legislative Interim Studies to the 1977Legislature, Proposal No. 37: Local Government Revenue Sources and Needs; December, 1976; Pg. 37-1.
[22]. Id. at pg. 37-22.
[23] K.S.A. 12-137.
[24] Attorney General Opinion No. 81-33.